IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**CLARENCE ROBINSON**                                                **PETITIONER**

v.                              NO. 2:23-cv-00109-BSM-PSH

**C. GARRETT**                                                       **RESPONDENT**

FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following proposed Recommendation has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

In this case, filed pursuant to 28 U.S.C. 2241, petitioner Clarence Robinson ("Robinson") maintains that the Federal Bureau of Prisons ("BOP") has mistakenly determined First Step Act ("FSA") programming credits cannot be applied to his sentence because he is classified as a "high" risk to recidivate. It is recommended that this case be dismissed without prejudice because he failed to exhaust his administrative remedies before filing the case.

The record reflects that in 2021, Robinson was sentenced to thirty-six months' imprisonment following the revocation of his term of supervised release. He entered BOP custody and came to be housed at the Federal Correctional Complex in Forrest City, Arkansas ("FCC Forrest City"). He represents that he eventually learned he is entitled to earn FSA programming credits, but the credits cannot be applied to his sentence because he is classified as a "high" risk to recidivate.[1] Currently, his projected release date via good conduct time is May 5, 2024.

---

[1] The FSA provides an incentive for a prisoner's participation in evidence-based recidivism reduction programming, such as classes and productive activities. See Stewart v. Snider, No. 1:22-cv-00294-MHH-JHE, 2022 WL 2032305 (N.D. Ala. May 10, 2022), report and recommendation adopted, 1:22-cv-00294-MHH, 2022 WL 2019965 (N.D. Ala. June 6, 2022). The FSA enables a prisoner to acquire time credits, which are applied toward his pre-release custody or supervised release. See 18 U.S.C. 3632(d)(4)(C).

On April 19, 2023, Robinson signed the petition at bar. The Clerk of the Court filed the petition, and began this case, six days later. In the petition, Robinson maintained that the BOP has mistakenly determined FSA programming credits cannot be applied to his sentence because he is classified as a "high" risk to recidivate. He specifically alleged the following in support of his contention:

> … I am requesting that this Court look into and order corrective action to all errors that the prison, FCI Forrest City Medium and the BOP are having with the application of Federal Time Credits, Halfway House/Home Confinement Placement that I have rightfully programmed to earn under the Fair Sentencing Act, Second Chance Act and First Chance Act of 2018 Law. I have earned credits that can be used to reduce my sentence and increase placement toward Halfway House/Home Confinement or directly released.
>
> The BOP has chosen their own way applying time credits by only allowing inmates who are deemed or scored as a low or minimum recidivism risk on the Pattern Risk Assessment sheet. I brought this error to the Inmate Systems Management Department here at FCI Forrest City-Medium. They contacted DSCC which is Central Office for the FBOP and they replied saying that I am a high recidivism risk. According to my case manager, I scored as high because of my criminal history. The BOP are allowing inmates that are considered medium or high eligible inmates to earn the FSA time credits but we are not allowed to use them until we reach a low recidivism score which would take a great amount of time to accomplish based on the criteria it takes to do that. This is not what the First Step Act, Fair Sentencing Act and Second Chance Act states. The BOP has created their own language of the Law and its intent and leaving it up to the inmates to dispute.

> The specific statute is 18 U.S.C. 3632(d)(4)(C) which states: "Time Credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in pre-release custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 18 U.S.C. 3624(g), into pre-release custody or supervised release."
>
> NOWHERE in the statute does it say, "If inmates are determined to have a medium or high recidivism risk, they're not allowed to apply earned Time Credits." Reading the First Step Act, Fair Sentencing Act and Second Chance Act Law over 5 times myself, I have yet to see anywhere in the Law that I am not allowed to apply Time Credits I have earned or be placed in pre-release custody. The only difference that I saw is that high or medium recidivism risk prisoners earn 10 days while low and minimum risk prisoners earn 15 days. I have served over 50% of my sentence without any incident reports, and I've been in the R-DAP program since Aug. of 2022.

See Docket Entry 1 at CM/ECF 1-2. (Emphasis in original).

In the petition, Robinson also briefly addressed the exhaustion question. He represented that in an attempt to resolve this dispute, he spoke to "A.W. Edge, A.W. Kessler, A.W. Stalhood, CMC Hill, Unit Manager O'Kane, and Case Manager Cleaves (B-2) along with filing all ... inmate remedies about this situation." See Docket Entry 1 at CM/ECF 2. Robinson represented that his efforts to resolve the dispute were unsuccessful because the prison staff has created its "own language of the law" and refuse to consider any complaints. See Docket Entry 1 at CM/ECF 2.

Following the filing of this case, Robinson filed with the Clerk of the Court a partial copy of a BOP "Documentation of Informal Resolution Attempt." In the document, addressed to BOP officials and dated April 28, 2023, or three days after the Clerk of the Court filed the case at bar, Robinson represented the following:

> I am seeking assistance with addressing [disparate acts] committed by "BOP Officials" resulting in violations of my Fifth and Fourteenth Amendment right to Equal Protections of Law.
>
> In my case, despite being told by BOP officials that [I] could not receive the incentive of going home a year early for my participation in R-DAP, I decided to go ahead and participate in the program. Upon agreeing to participate in the RDAP program at Forrest City, AR, prison officials informed me that I could earn additional placement in the halfway house if I successfully completed the RDAP program.
>
> I am a rehabilitated human-being. [I am 56 years old.] As a part of my rehabilitation, I have participated in several courses offered by the BOP and other sources to correct my past criminal thinking. Recently, I have successfully participated in the RDAP program at Forrest City, AR, in an effort to continue my rehabilitation.
>
> While similarly situated defendants have received six months halfway house placement, or more; BOP officials at Forrest City submitted me for four months halfway house placement only. Although I have successfully participated in RDAP and was informed by BOP officials that I could earn additional halfway house placement upon completion.

See Docket Entry 5 at CM/ECF 1.

Respondent C. Garrett ("Garrett") filed a response to the petition and asked that this case be dismissed. Garrett offered two reasons why, one of which is that Robinson failed to exhaust his administrative remedies before filing this case.

Robinson was given up to, and including, August 14, 2023, to file a reply in which he explained why this case should not be dismissed for the reasons given by Garrett. August 14, 2023, came and went, and Robinson filed nothing in reply.

The undersigned then began reviewing this case, cognizant of the fact that a prisoner may challenge the BOP's execution of his sentence only if he first presents his challenge to the BOP. See Smith v. Yates, No. 2:23-cv-00003-BSM-JJV, 2023 WL 3587925 (E.D. Ark. Apr. 27, 2023), report and recommendation adopted, No. 2:23-CV-00003-BSM, 2023 WL 3585267 (E.D. Ark. May 22, 2023). The prisoner's failure to exhaust his administrative remedies is typically an affirmative defense, and the respondent bears the burden of raising and proving the absence of exhaustion. See Id., 2023 WL 3587925. Here, Garrett raised Robinson's failure to exhaust as an affirmative defense. The only evidence touching on the issue, though, was the partial copy of a BOP "Documentation of Informal Resolution Attempt" submitted by Robinson.

Given the dearth of evidence touching on the exhaustion question, the undersigned gave Garrett an opportunity to support his affirmative defense. Garrett was directed to file a supplemental response and support it with an affidavit from a BOP official attesting to the steps Robinson took, if any, to completely exhaust his administrative remedies before filing the case at bar.

Garrett has now filed a supplemental response. Garrett joined the supplemental response with a Declaration from Rashonda Smith ("Smith"), an Administrative Remedy Clerk at FCC Forrest City, whose duties include the preparation of responses to Administrative Remedy Requests from inmates. In the Declaration, Smith represented the following:

> During his incarceration, inmate Robinson has submitted 72 Administrative Remedy Request[s] or Appeals. ...
>
> Inmate Robinson has exhausted Administrative Remedies on only one issue in 2013. ...
>
> Inmate Robinson has filed four Administrative Remedy Requests or Appeals during his current Supervised Release Violation sentence. ...
>
> None of the Administrative Remedies or Appeals submitted by inmate Robinson at any time concern the claims made in his present petition. ...

See Docket Entry 12-1 at CM/ECF 4-5.

Robinson was given up to, and including, November 6, 2023, to file a supplemental reply in which he explained why this case should not be dismissed for the reason given by Garrett in his supplemental response. November 6, 2023, has now come and gone, and Robinson has not filed a supplemental reply.

The prior submission of disputes to an administrative agency is "common to our law." See Mason v. Ciccone, 531 F.2d 867, 870 (8th Cir. 1976). The practice promotes and permits the following:

> (1) the development of the necessary factual background upon which the claim is based; (2) the exercise of administrative expertise and discretionary authority often necessary for the resolution of the dispute; (3) the autonomy of the prison administration; and (4) judicial efficiency from the settlement of disputes at the prison level.

See Id. The proper exhaustion of remedies means using all of the steps the administrative agency "'holds out and doing so properly (so that the agency addresses the issues on the merits).'" See Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in Pozo). "The benefits from prior administrative review are substantial," and "[t]he procedure must be given an opportunity to succeed." See Mason v. Ciccone, 531 F.2d at 870 (footnote omitted).

The BOP has a four-step administrative grievance process.[2] The prisoner challenging his entitlement to FSA programming credits must first use that process, and use it completely, before moving on to federal court. See Orasco v. Yates, No. 2:22-cv-00156-BSM-ERE, 2002 WL 18027627 (E.D. Ark. Dec. 12, 2022), report and recommendation adopted, No. 2:22-cv-00156-BSM, 2022 WL 18027631 (E.D. Ark. Dec. 30, 2022); Adams v. Hendrix, No. 2:19-cv-00038-KGB-BD, 2019 WL 7631401 (E.D. Ark. May 20, 2019), report and recommendation adopted, No. 2:19-cv-00038-KGB, 2020 WL 365417 (E.D. Ark. Jan. 22, 2020). Once the petitioner arrives in federal court, it must be determined whether he used the process completely; if he did so, only then may his claim be considered on the merits. See Terry v. Dycus, No. 2:19-cv-00134-DPM-JTR, 2020 WL 8182183 (E.D. Ark. Dec. 11, 2020), report and recommendation adopted, No. 2:19-cv-00134-DPM, 2021 WL 149268 (E.D. Ark. Jan. 15, 2021).

---

[2] The BOP's four-step administrative grievance process is as follows:

(1) an attempt at informal resolution with prison staff; (2) submission of a formal grievance to the Warden, on form BP-9, delivered to the institution staff member designated to it; (3) an appeal of an unfavorable Warden's decision to the appropriate Regional Director, on form BP-10; and (4) an appeal of an unfavorable Regional Director's decision to the General Counsel, on form BP-11. See 28 C.F.R. 542.13–542.18.

See Orasco v. Yates, No. 2:22-cv-00156-BSM-ERE, 2002 WL 18027627, 3 (E.D. Ark. Dec. 12, 2022), report and recommendation adopted, No. 2:22-cv-00156-BSM, 2022 WL 18027631 (E.D. Ark. Dec. 30, 2022).

Here, Smith's Declaration conclusively establishes that Robinson did not completely use the BOP's four-step administrative grievance process before filing the case at bar. In fact, the Declaration conclusively establishes that he did not even begin the process before coming to federal court.

It is true that Robinson filed with the Clerk of the Court a partial copy of a BOP "Documentation of Informal Resolution Attempt." The document, though, does not rebut Smith's Declaration for at least three reasons. First, the "Documentation of Informal Resolution Attempt" was dated April 28, 2023, or three days after the Clerk of the Court filed the case at bar. Second, the allegations contained in the "Documentation of Informal Resolution Attempt" do not pertain to the dispute at bar; they instead pertain to Robinson's attempt to gain additional sentencing credits for his completion of a Residential Drug Abuse Program. Third, the "Documentation of Informal Resolution Attempt" does not establish that Robinson fully appealed the denial of his attempt at informal resolution.

Thus, Garrett has shown that Robinson failed to completely exhaust his administrative remedies before filing the case at bar. The only question is whether Robinson's failure to exhaust should be excused and his claim considered on the merits.

The exhaustion requirement may be excused if the prisoner can show that requiring him to exhaust his administrative remedies would be futile. See Lueth v. Beach, 498 F.3d 795 (8th Cir. 2007).[3] For example, in Tensley v. Outlaw, No. 2:10-cv-00014-BD, 2010 WL 2671782 (E.D. Ark. July 2, 2010), a petitioner's failure to exhaust was excused because he was near the conclusion of his sentence and lacked sufficient time to exhaust.

The undersigned is not persuaded that requiring Robinson to exhaust his administrative remedies would be futile. The undersigned so finds for at least three reasons.

First, the dispute at bar, i.e., how to administer FSA programming credits, is the kind of dispute that the BOP administrative grievance process is designed to address. The undersigned has no desire to by-pass that process and requiring Robinson to first use it will serve a number of vital interests.

Second, Robinson's projected release date is currently May 5, 2024. He has adequate time to complete the BOP's four-step administrative grievance process and, if the dispute at bar is not resolved in his favor, begin another case pursuant to 28 U.S.C. 2241.

---

[3] In Lueth v. Beach, the Court of Appeals observed that jurisdiction to decide a prisoner's challenge to his sentence was not affected by his failure to exhaust because the exhaustion requirement was judicially created, not jurisdictional.

Third, it might be that the exhaustion requirement can be excused if a case involves a purely legal issue. The case at bar, though, involves more than a purely legal issue, and a just resolution of this dispute undoubtedly requires the development of the factual background and the exercise of the BOP's administrative expertise. Moreover, the undersigned is cognizant of the autonomy of prison officials and has no desire to undermine the BOP four-step administrative grievance process.

Robinson has therefore failed to show that requiring him to exhaust his administrative remedies would be futile. He must exhaust those remedies completely before his claim can be considered.

It is for the foregoing reason that this case should be dismissed. It is therefore recommended that the case be dismissed without prejudice, all requested relief be denied, and judgment be entered for Garrett.

DATED this 14th day of November 2023.

_____
UNITED STATES MAGISTRATE JUDGE